**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| | § | |
| IN RE: | § | CASE NO: 25-12414 |
| | § | |
| AARIEL A. KIRKLIN AND | § | CHAPTER 13 |
| AUSTIN KIRKLIN, SR., | § | |
| | § | SECTION A |
| | § | |
| DEBTORS. | § | |

## ORDER

The Court held an evidentiary hearing on April 2, 2026, to consider two motions filed by the Debtors. At the start of the hearing, the Debtors informed the Court that they had settled their *Motion To Value and Cram Down Secured Debt (2022 Ram 1500)*, as amended, [ECF Docs. 15 & 68], with the counterparty to that motion, Navy Federal Credit Union. The parties filed a joint stipulation resolving that motion into the record on April 13, 2026. [ECF Doc. 104].

The evidentiary hearing thus focused solely on the second motion filed by the Debtors, which seeks to bifurcate Ally Bank's claim for purposes of plan confirmation pursuant to 11 U.S.C. §§ 506(a), 1322(b)(2), and 1325(a)(5) (the "Cramdown Motion"). [ECF Doc. 16, as amended, ECF Docs. 47 & 69]. Ally Bank opposed the Cramdown Motion. [ECF Docs. 46 & 87]. The Court heard testimony from Ms. Kirklin, admitted Debtors' Exhibits A–C, considered legal argument by the parties, and took the matter under advisement. [ECF Doc. 97]. Now, having considered the record and applicable law, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy 7052 and 9014.

### JURISDICTION

This Court has jurisdiction to grant the relief provided for herein pursuant to 28 U.S.C. § 1334. The matter presently before the Court constitutes a core proceeding that this Court may

hear and determine on a final basis under 28 U.S.C. § 157(b). The venue of the Debtors' Chapter 13 case is proper under 28 U.S.C. §§ 1408 and 1409(a).

## DISCUSSION

Under the Bankruptcy Code, "a lien creditor generally holds a secured claim only to the extent of the present value of the collateral that the lien encumbers." *Ford Motor Credit Co., LLC v. Dale (In re Dale)*, 582 F.3d 568, 570 (5th Cir. 2009); *see also* 11 U.S.C. § 506(a). "If the amount of the secured claim exceeds the present value of the collateral, the Code treats the excess amount as a separate, unsecured claim." *Id*. But an exception to that general rule exists. Pursuant to an unnumbered paragraph located after paragraph (9) in § 1325(a) (known as "the hanging paragraph"), bifurcation of a creditor's claim into secured and unsecured amounts under § 506(a) is not allowed when the creditor holds a purchase-money security interest ("PMSI") in a motor vehicle acquired for the debtor's personal use within 910 days of the debtor's bankruptcy filing.

No one contests the fact that the Debtors financed the 2016 Chevrolet Camaro for their family's personal use within 910 days of their bankruptcy filing and that Ally Bank's claim is secured by the car. In their motion, however, the Debtors assert that "because Ally [Bank] financed non-purchase money components as part of the vehicle loan," that is, an extended warranty and insurance deficiency contract ("gap" insurance), "its claim is not protected by the hanging paragraph and must be valued under § 506(a)." [ECF Doc. 69, ¶¶ 2 & 5]. Citing two cases from this Circuit, the Debtors contend that "[c]ourts have consistently held that the inclusion of such non-purchase-money items removes PMSI protection, rendering the hanging paragraph inapplicable." [ECF Doc. 69, ¶¶ 3 & 4 (citing *In re Dale,* 582 F.3d at 568; *In re White*, 352 B.R. 633 (Bankr. E.D. La. 2006)).

2

The Bankruptcy Code does not define PMSI; the Fifth Circuit instructs bankruptcy courts "to look to state law to define security interests created under state law." *In re Dale*, 582 F.3d at 573. Applying Uniform Commercial Code ("UCC") provisions adopted in Texas, the *Dale* court held that "negative equity, gap insurance, and extended warranties constitute 'purchase-money obligations' under Texas law," and, therefore, the creditor in that case held a PMSI in the debt associated with those expenses. *Id*. at 573–75. Under Texas law, "the Code's hanging paragraph operates to prevent bifurcation of [the] debt." *Id*. at 575.

The *White* court applied Louisiana law to define PMSI in that case and found that the Louisiana UCC includes expenses incurred for the purpose of acquiring a vehicle constituted purchase-money obligations. But in 2006 when *White* was decided, Louisiana law specifically identified extended warranties and "gap" insurance as policies of insurance, which were excepted from PMSI under the Louisiana UCC. *See* 352 B.R. 633, 639–40. Thus, the *White* court found that § 1325's hanging paragraph applied to the portion of the creditor's claim excluding the costs for an extended warranty and "gap" insurance. *See id*. at 641–46.

Here, Ally Bank filed Proof of Claim No. 9, asserting a prepetition claim for $22,118.97. In line with *In re Dale* and *In re White*, this Court applies Louisiana state law to determine if Ally Bank's claim is a PMSI. Section 9-103 of the Louisiana UCC defines "purchase-money obligation" as "an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." LA. REV. STAT. ANN. § 10:9-103(a)(2). The parties do not dispute that the Retail Installment Sale Contract included in the price for acquiring the 2016 Chevrolet Camaro included $1,195.00 for "gap" insurance and $2,477.00 for a "Service Contract." *See* Proof of Claim 9-1. The expense for "gap" insurance is still excluded from Ally Bank's PMSI under Louisiana law.

3

*See In re White*, 352 B.R. at 638–39 (citing LA. REV. STAT. ANN. §§ 6:969.26 & 10:9-103). In 2018, however, the Louisiana Legislature enacted the Motor Vehicle Service Contract Providers framework, which expressly provides that motor vehicle service contracts "[are] not insurance and shall be exempt from all provisions of the Louisiana Insurance Code." LA. REV. STAT. ANN. § 51:3163(H). The Service Contract is labeled as such and does not identify itself as an insurance product. Because the Louisiana UCC insurance exclusion no longer applies to that product, it is properly characterized as a purchase-money obligation. The Service Contract charge is, therefore, included in the calculation of Ally Bank's PMSI.

The Court thus finds that § 1325's hanging paragraph applies to the majority of Ally Bank's claim. For purposes of plan confirmation, the Debtor must pay Ally Bank a secured claim for $20,923.97, representing the full amount of Ally Bank's claim minus the cost of "gap" insurance.

Accordingly,

**IT IS ORDERED** that the Cramdown Motion, [ECF Doc. 16, as amended, ECF Docs. 47 & 69], is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Court values Ally Bank's allowed secured claim in the amount of $20,923.97.

New Orleans, Louisiana, April 17, 2026.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE

4